06-1266 Zenon Environmental v. US Filter In considering the issue of incorporation by reference presented by this case, there are three points in which I would respectfully ask the Court to focus. Point 1. Although the issue presented by this case has appeared only infrequently, the Court has been very clear about the applicable standard for judging the scope and operability of an incorporation by reference. This standard does not, as Zenon suggests, that the incorporation need only be reasonably precise. The standard articulated by this Court in Cook, Biotech, and McFadden's case is substantially more rigorous. In this case, Mr. Selwin stands to decide how to just read the text of the so-called incorporation, which states the vertical skein is not the subject matter of this invention. Further details relating to a most preferred skein are found in earlier patent, the relevant disclosures of each of which are included by reference. Now, it's clear that what is incorporated is details of the vertical skein. And it's also clear from looking at the relevant patents, including the patent in suit, 319 patent, that the skein is different from the gas distribution system. Now, you need incorporation by reference of the gas distribution system, but the incorporation by reference from the patent does not provide that. It only extends to the skein. Isn't it that simple? And I agree with that as the appellant, that the incorporation by reference does not include the gas distribution system of the parent patent. What it incorporates is the details related to the construction and deployment of a skein. And the definition of the skein is quite clear. And the 373 patent makes quite clear what those details are related to the construction and deployment of the skein. And none of them relate to a gas distribution system. So we don't have to deal with the generalities that you're about to address. Okay, I will move on. The issue is the gas distribution system is not an issue, is that accurate? Other than the surprise it relates to the skein. It's U.S. Filter's position that the incorporation by reference is a limited one. And it's limited such that it only includes the details relating to the construction and deployment of a skein and not the gas distribution system. But how does that help you? It helps because for there to be continuity under section 120, the claims of the 319 patent, in particular a certain claim 7 of the 319 patent suit, need to have written description support in each and every application in the chain back to the 373 patent for which the patent suit claims priority. In other words, they need gas distribution systems in the chain. That's correct. And the parties are in agreement that if that incorporation by reference does not include, if it's not broad enough to include the gas distribution system of its parent's patents, then the patent suit is invalid for reasons of anticipation. Mr. Sell, in the text that we were referring to from the 250 patent, clearly it talks about incorporating materials relating to the skein, but it also talks about the construction and deployment. And then the incorporation language talks about the relevant disclosures of which are included by reference here. So it's not only the textual material relating to the skein, but it's the textual material and the details relating to the construction and deployment of the skein. So I guess that's really where the debate lies.  And does deployment mean that the gas distribution system is part of what is incorporated by reference? I think that's the correct way to frame the question. The issue being, what is a detail relating to the construction and deployment of a most preferred skein? A detail is a small, particular, a minor element. And if we look at the parent patents, it in fact tells us what the details are relating to the construction and deployment of a skein. Is there any way in which the skein, is that how it's pronounced, skein, skein? There's a large debate on that too. Is there any way in which this skein could be deployed without use of a gas distribution system? Absolutely. If you look at claims one through nine of the 373 patent, that game, the grandparent patent, none of those claims require a gas distribution system. They claim a microfiltration membrane device having a skein, but not having a gas distribution system. So it's perfectly possible to have a device that meets all the limitations of the 373 patent, but not have a gas distribution system. Well, maybe the fact that you're just debating what is or is not incorporated answers the question. I suppose from your perspective you're arguing that our precedent is quite clear, that to incorporate by reference there must be some clear definitive particularization of exactly what is incorporated. If there's some debate or ambiguity, the burden is going to fall on the shoulders of the patentee who had the power of the pen. That's correct, Your Honor. The standard is quite a rigorous one. Detailed particularity, specific material has to be identified to clearly indicate where the material may be found in the host document. In this case, Zenon's own expert, while he testified that the gas distribution system in the 373 patent is incorporated, also said that it's ambiguous, that reasonable people can disagree as to the scope. If we're debating what the scope is, reasonable people can disagree. It was necessary for the district court judge to have an evidentiary hearing because he couldn't figure out what it meant on the four corners of the patent. It's ambiguous. It does not meet the advanced display standard. Turning briefly to the issue of claim construction, the court was correct to find clear lexicography for the terms header and scion and to adopt word-for-word the definitions chosen by the inventors. Zenon's proposed construction uses the same definitions, except that Zenon seeks to delete the words in the scion from the definition of header. Phillips, in other cases, made clear that when the specification gives special definition to a claim term, the inventor's lexicography governs, controls. In other words, where there is lexicography, that is the beginning and the end of the claim construction analysis. In this case, the signals of lexicography are clear and the signals are unmistakable. First, the definitions and the specification of the patent suit begin by identifying the term that is being defined. Then they put that term in quotes. In the case of the scion, the patent says that, quote, the term vertical scion in the title specifically refers to, followed by the definition. In the case of header, the patent says that the term header is used to specify, again, followed by the definition. These definitions appear in Claim 1 of the patent suit at the outset of the patent. The OA3 patent, which the parties agreed the 319 patent incorporates by reference to Column 1 of the 319 patent, actually includes at the beginning of Column 21 a section titled glossary that, quote, is provided for terms to define their meaning in the context in which they are used. The terms vertical scion and header appear in this glossary with the identical definitions as appear in the 319 patent suit. Now, although it does not matter whether the lexicography is consistent with the rest of the intrinsic evidence, because the lexicography must govern, the fact is that the intrinsic evidence is absolutely consistent with the special definitions that the inventors gave for terms scion and header. Specifically, the intrinsic evidence confirms, and it is undisputed, that the scion must include a pair of headers, that the fibers in a scion must be potted so that their ends are open, and that the headers of the invention are always in the scion. In fact, in every single embodiment of the 319 patent suit, the headers are potted with open-ended fibers such that the permeate may be withdrawn from one or both ends. To all of this, Menon says that the lexicography is inconsistent with the limitation in Claim 7 requiring that the lumens of the fibers be in fluid communication with at least one permeate collection means. But there is no inconsistency. Fibers must be potted in the headers with their ends open so that permeate can be withdrawn from one or both ends. That is perfectly consistent with the definition of header and with the definition of scion. Indeed, independent Claims 1 and 5 also require a scion with fibers potted in the header such that their ends remain open, yet include the same limitation as Claim 7 that permeate collected from at least one permeate collection means. So there is no inconsistency between having at least one permeate collection means limitation and all requirements of a scion. Thank you. May it please the Court. I'll start with the, I represent C-9 of course, and I'll start with the defense of the appeal. The Court is focused on the key language in the 250 specification, both Judge Lori and Judge Lynn. But I want to focus on a couple of words in the language and then focus on the 373 pact. The language says further details relating to, not containing, not concerning, but relating to, the construction and deployment of A, not B, most preferred scion. And then the two patents, the 373 and the 111. But does state scion? Yes. Scion is different from gas distribution system. Right, but details related to scion is different than scion, and details relating to construction and deployment are different than scion and broader than scion. Where does that lead us? It sounds to me like you're arguing for some open-ended incorporation by reference. There's no specificity as to what is meant by further details. Well, Your Honor, what I believe I'm arguing for is the one of skill in the art can read this language and look at the specification of the 373 patent and determine what's incorporated with some element of subjective judgment. And the court in Cook and Voss has approved language that requires one of skill in the art to look at language and then determine what that language covers in an earlier patent. And in Cook, the language was the procedure for preparing... We're not dealing with Cook. We're dealing with this series of patents. Do you agree that you need continuity for gas distribution systems throughout these? Yes. Yes. And so what you're arguing is that the details relating to the scion include the gas distribution system. Absolutely. And the patent... But they're separate claim limitations. Well, Your Honor, sometimes they're separate, sometimes they're not. But in terms of looking at the disclosed specification... Where are they not? Well, in Claim 7 of the 319, the gas distribution element is the last element and the elements of the rest of the system are in the elements above. But more importantly, in the specification of the 373 patent... No, but it means that it's a detail related to the construction and deployment of the other, particularly deployment. Because, understand, the scions in this case are vertical scions... What you're saying is that in an apparatus containing several components, each component is a detail with respect to all the other components. I'm not saying that universally. In this case, the scion is a vertical scion with fibers going up and down. There's no dispute that for that scion to work, there needs to be bubbles provided to that scion to go up the scion to clean the fibers on the way up. There's no dispute about that. That's the only way the thing works. In every embodiment of the 373 patent and the 319 patent, there is described a way to get those bubbles up that scion. And that's a gas distribution system. So there is no system deployed or constructed, no scion deployed or constructed in the entire 373 patent that doesn't have a gas distribution system to provide those necessary bubbles. Now, what is claimed is a separate matter. But what is required for the invention to operate is a gas distribution system. And so when one of skill in the art, and this was tested at length with expert testimony down below in cross-examination, when one of skill in the art reads this language, one sees the details relating to the construction and deployment of the scion, which I would agree with you, is separate from the gas distribution system. But the scion cannot be deployed in isolation. The scion cannot operate without bubbles being provided to it. What you're saying, Mr. Daniels, is that an apparatus consisting of elements A, B, C, and D requires A, B, C, and D. What I said for D requires A for the apparatus consisting of A, B, C, and D. If I understand your question, Your Honor, what I'm saying is that the language... You're taking your argument and trying to show that it doesn't amount to anything because D is different from A. Right, but the question is whether or not D is related to A, B, and C, and whether or not it's a detail related to the construction and deployment of A, B, and C. It's not a question of whether it is or isn't because the language doesn't say is. The language says details relating to the construction and deployment of A. Of course, we're talking about incorporation by reference, which requires some kind of evidence. And the word detail relating to another claim limitation is a little vague if it is supposed to refer to the gas distribution system. Your Honor, with all due respect, I believe it is in the same order of specificity as the language in Cook and the language in Voss. In Cook, the language is a procedure for preparing. In Voss, the language is general discussion of glass ceramic materials and their production. In both of those cases, what's required is for the court to look at the call of the incorporation language and have one of ordinary skill look at what is called for by that language. Mr. Alcock, is there anything disclosed in the 373 patent other than the scheme and the gas distribution system? I think that's pretty much it. So your interpretation, then, of the language in the 250 patent, the incorporation language, is that the entire disclosure of the 373 patent was incorporated. That's what the expert testimony is down below. If that's what you intended to do, why didn't you simply say that? Your Honor, the patent lawyer chose these words. It's a problem of your own making, but the patent doesn't say that. It doesn't, Your Honor, but here we're not concerned about the areas around the edges, so to speak. The question is the gas distribution system. Your opponent would say that the gas distribution system is the stuff around the edges of the scheme, which is clearly incorporated. The record below would indicate the other. The expert testimony of both our expert and their expert said that clearly the gas distribution system is, in our expert's case, he said, directly at the core of details related to the construction and deployment, and their expert even conceded that it was a detail related to the construction and deployment. But isn't a more natural read of this language that the intent here is not to incorporate the entirety of the references, only those portions that are specified, because elsewhere in the same document, clearly patents are incorporated in their entirety. Yes, Your Honor, I agree with that. I'm just saying that it's a practical matter when one of skill in the art looks at the 373. The 373 patent is pretty much about a scheme and a gas distribution system. If we disagree with you on the corporation issue, is it cross-appealable?  If the patent is invalid, why does claim construction and infringement matter? I think you're right. I think you're right. So with respect to – does the court have any further questions on the appeal? Time is short. If you don't mind, proceed with the cross-appeal. Well, just briefly, Your Honor. The court here read in a detailed definition of the term scheme into a claim that does not have the word scheme in it. And the detailed definition that was read in was inconsistent with the language that was already there. So in our view, the claim construction violated really a primary tenet of claim construction, which is that the construction is contrary to the language of the claim. The claim says at least one permeate collection means. And the definition of scheme that was read in requires at least two permeate collection means. And so the definition that was read in is flatly inconsistent with the claim language. In addition, the specification never defines the word scheme the way the trial court below did. It uses the term in a number of different ways. And in five places in the specification, it uses it in a manner consistent with the claim. That is, it shows embodiments where there's only – – word scheme as used by the trial court? Well, Your Honor, I don't believe it's a definition in the patent. I think the patent uses the term. And the portion of the patent specification that the court adopted is a definition. But it's not a new term for a new kind of structure in this act, as I understand. It's used – that's correct, Your Honor. It's used very broadly. In fact, one of the pieces of prior art that's referenced in the specification talks about using a scheme that only has one header. It doesn't even have two headers. So I believe that's correct, Your Honor. The term has a very, very broad usage, not limited to the one – the precise definition that the court adopted below. And it's used in a number of places, including in three or four embodiments in the specification below, in ways that would make clear that one would withdraw or permeate only from one area, not the other. So I've reserved a few moments for this topic after counsel addresses you again. Okay. Thank you, Mr. Rothoff. Mr. Rothoff, I think however the appeal turns out, I think you can be confident that the panel agrees with your commenciation-related scheme. Your Honors, I would just like to make one point in rebuttal, which is there is a very good reason why Zenon's inventors and attorney drafted a limited corporation, by reference, that tried to incorporate from the parent patents only their details relating to the construction and deployment of some scheme and not their gas distribution system. The purpose of the intervening patents was to describe and claim a new gas distribution system that is different from that disclosed in the parent patents and no purpose would have been served by incorporating the old gas distribution system. The old gas distribution system of the parent patents describes introducing air above the lower header, such as by the use of tubes that serve as flow passages so the bubbles flow up through the scheme. The new gas distribution system of the intervening patents does not introduce air above the lower header. It does not discharge bubbles above the lower header through the scheme fibers. It does not have tubes and it does not introduce air at or near the base of the lower header. The gas distribution system of the intervening patents focuses on a different problem than that of the parent patents, namely how to effectively oxygenate a liquid to be filtered and accordingly offers a different gas distribution design than the parent patents. In short, the gas distribution system of the intervening patents simply does not include or incorporate the features of the gas distribution system of the parent patents. However, there was one feature of the parent patents that remained relevant and common to the disclosure in the intervening patents and that is the scheme. Therefore, it makes perfect sense that the inventors would incorporate details relating to the construction and deployment of a scheme but not the gas distribution system. And in closing, I would just quote Xi'an's own expert testifying at trial about the passage on which we've been focused. Quote, it's funny how much ambiguity there is in this little section. Thank you. Thank you, Mr. Sullivan. Mr. Alcock, I'm going to go on to the cross-appeal. Yes, Your Honor. So with respect to the cross-appeal, Your Honor, there are five places in the body of the specification in addition to the language of the claim where the court's limiting claim construction by reading scheme into the claim is contradicted. In five places in the specification, it talks about the circumstance where permeate is collected from only one header, not from two. At column four, lines 49 to 52, it talks about enabling permeate to be collected from at least one header. That's almost the exact language of claim seven. At column three, lines 32 to 36, it talks about whether permeate is withdrawn from the upper header, the lower header, or both. Now, which argument are you rebutting, Mr. Sullivan? Oh, I guess Mr. Sullivan didn't address this particular issue directly, Your Honor. I apologize. Then I think I'm done unless the court has any further questions on the cross-appeal. Any more questions? Thank you. Mr. Alcock and Mr. Sullivan, thank you both.